**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MONDAY ODUIMOH,** | : | **CASE NO. 1:20-CV-469** |
| **PLAINTIFF,** | : | **JUDGE** |
| **V.** | : | |
| **VILLAGE OF ELMWOOD PLACE,** | : | |
| **AND** | : | **COMPLAINT WITH JURY DEMAND** |
| **ROBERT MCCONNELL,** | : | |
| **DEFENDANTS.** | : | |

**PRELIMINARY STATEMENT**

1. This case challenges the unlawful and injurious governmental intrusion into the life of Monday Oduimoh.

2. Mr. Oduimoh is a black man who was unlawfully targeted, assaulted, handcuffed, detained, and charged for a crime he did not commit by a white police officer.

3. The Defendants the Village of Elmwood Place and Sgt. Robert McConnell have a history of treating black citizens differently than white citizens.

4. Mr. Oduimoh was targeted due to his race, was treated unlawfully due to his race, and was falsely charged with a crime due to his race.

5. Although the Constitution of the United States affords citizens of all races the right to be treated equally regardless of their race, black Americans have suffered from race-based discrimination throughout the history of the United States.

1

6. By way of this case, Mr. Oduimoh wishes his voice to be heard amongst the countless others who understand that black Americans will continue to suffer at the hands of police officers until they are afforded the rights guaranteed to them by the Constitution of the United States. Mr. Oduimoh seeks to vindicate these rights and hold the Defendants accountable for their violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction under 28 U.S.C. § 1331 because of the federal claims involved including those arising under the United States Constitution and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over the state law claims involved under 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the Defendants are located within this District, and the conduct complained of occurred within this District.

**PARTIES**

10. Plaintiff Monday Oduimoh, a black man, is a citizen of the State of Ohio and resides within this District.

11. Defendant Sergeant Robert McConnell is a white man who was employed as a police officer by the Village of Elmwood Place in Hamilton County, Ohio. During the relevant periods of time herein, Sgt. McConnell was responsible for the investigation, stop, search, detention, arrest, and filing of charges of against Mr. Oduimoh.

12. Defendant the Village of Elmwood Place (the "Village") is a municipal corporation located within this District.

13. All actions and omissions set forth herein by all Defendants were done under the color of state law.

**FACTS**

14. On September 28, 2019 at approximately 4:49 p.m. Mr. Oduimoh was driving to work when he pulled into the UDF on Vine Street to get gas.

15. Upon information and belief, Sgt. McConnell drove his cruiser behind Mr. Oduimoh and decided to conduct a "registration check" of Mr. Oduimoh's license plate number solely because Mr. Oduimoh is a black man.

16. Upon information and belief, when Sgt. McConnell ran Mr. Oduimoh's license plate, he was informed that there was a warrant for the arrest of man named Damien Johnson.

17. Upon information and belief, Mr. Oduimoh's ex-wife had allowed Damien Johnson to drive Mr. Oduimoh's car in 2018, at which time Damien Johnson was pulled over for speeding and was charged with driving under suspension - a first-degree misdemeanor under Ohio Revised Code § 4510.11.

18. Upon information and belief, a warrant was issued for Damien Johnson when he did not appear in court for the first-degree misdemeanor charge of driving under suspension.

19. Mr. Oduimoh does not know who Damien Johnson is, and was never aware that Damien Johnson apparently drove Mr. Oduimoh's car.

20. After unlawfully targeting Mr. Oduimoh for being a black man, and discovering the warrant for Damien Johnson, Sgt. McConnell was determined to arrest Mr. Oduimoh.

21. Thus, Sgt. McConnell followed Mr. Oduimoh into the UDF parking lot, pulled his cruiser behind Mr. Oduimoh, and activated his lights.

22. Sgt. McConnell exited his vehicle and approached the driver side door of Mr. Oduimoh's vehicle.

23. Mr. Oduimoh had opened his door but had not yet exited his vehicle when Sgt. McConnell suddenly stood over Mr. Oduimoh and demanded his identification.

24. Mr. Oduimoh respectfully asked Sgt. McConnell, "What did I do?" to which Sgt. McConnell responded, "You don't get to ask me questions."

25. Mr. Oduimoh immediately produced his driver's license which identified him as "Monday Oduimoh" and not the Damien Johnson who had a warrant for the misdemeanor offense of driving under suspension.

26. Rather than examine the driver's license, Sgt. McConnell grabbed Mr. Oduimoh's wrist and violently jerked him out of the car, spun him around, forcefully pressed him up against the car, and handcuffed Mr. Oduimoh's wrists behind his back.

27. Mr. Oduimoh was never asked to step out of his car, and did not resist Sgt. McConnell whatsoever, yet he was forcefully removed from his car, handcuffed, and searched by Sgt. McConnell.

28. Sgt. McConnell then escorted Mr. Oduimoh to his police cruiser where he detained Mr. Oduimoh in the backseat of the cruiser while still handcuffed.

29. Sgt. McConnell then sat in the driver's seat of his cruiser where he began typing on his in-car computer.

30. From the backseat of the cruiser, Mr. Oduimoh asked Sgt. McConnell why he was being detained, at which point Sgt. McConnell told Mr. Oduimoh that he was Damien Johnson and there was a warrant for his arrest.

31. Mr. Oduimoh informed Sgt. McConnell of his actual identity, and implored Sgt. McConnell to look at his driver's license. Instead, Sgt. McConnell said Mr. Oduimoh was lying about his identity and continued to operate his in-car computer.

32. After approximately thirteen minutes, Sgt. McConnell finally determined that Mr. Oduimoh was not Damien Johnson.

33. Rather than release Mr. Oduimoh, Sgt. McConnell charged him with Obstructing Official Business and issued him a citation in which he alleged, in part that:

> I observed a blue in color 2007 Ford SUV…I conducted a vehicle registration check which showed multiple warrants attached to the vehicle on a black male subject. I looked in the vehicle and observed a black male operating the vehicle. I initiated a traffic stop and made contact with the driver whom was later identified as Monday A. Oduimoh. On contact with Mr. Oduimoh, he was extremely belligerent and screamed and yelled at me. I advised Mr. Oduimoh that his vehicle had warrants attached to it and asked for his identification. Mr. Oduimoh suggested that I was a liar and there were no warrants attached to the vehicle. Mr. Oduimoh continued to act in a belligerent manner and was moving his hands around in his car. I felt uncomfortable leaving Mr. Oduimoh in his vehicle without patting him down for weapons due to Mr. Oduimohs [*sic*] erratic behavior and not knowing if Mr. Oduimoh was the wanted person. I asked Mr. Oduimoh to step out of the vehicle and he refused. I ordered Mr. Oduimoh to step out of the vehicle. Mr. Oduimoh continued to refuse. I went hands on with Mr. Oduimoh and escorted him out of the vehicle. Mr. Oduimoh put up a brief struggle before being secured in handcuffs. This officer determined Mr. Oduimoh to not be the wanted person. This officer issued Mr. Oduimoh a misdemeanor citation and released him.

34. A true and accurate copy of the Citation Detail is attached as **Exhibit A**.

35. The Village does not outfit its officers with cruiser cameras or body cameras.

36. Sgt. McConnell thus believed that his interaction with Mr. Oduimoh was not recorded, which emboldened Sgt. McConnell to falsify his arrest report and charge Mr. Oduimoh for a crime he did not commit.

37. Mr. Oduimoh, however, was able to obtain the surveillance video from the UDF store, which recorded the unlawful actions of Sgt. McConnell.

38. There were no facts to support Sgt. McConnell's use of force against Mr. Oduimoh.

39. There were no facts to support Sgt. McConnell's handcuffing of Mr. Oduimoh.

40. There were no facts to support Sgt. McConnell's detention of Mr. Oduimoh in the back of his cruiser.

41. There were no facts to support Sgt. McConnell's decision to charge Mr. Oduimoh with the crime of Obstructing Official Business.

42. Sgt. McConnell intentionally falsified the Citation Detail.

43. Mr. Oduimoh appeared before the Village Mayor's Court on October 8, 2019 at which time he entered a plea of not guilty.

44. His case was transferred to the Hamilton County Municipal Court where, after reviewing the case file, the prosecutor dismissed the case.

45. Sgt. McConnell has a history of making unlawful arrests.

46. When Sgt. McConnell was hired by the Village in 2016, the Village did not investigate Sgt. McConnell's past employment history.

47. Had the Village investigated Sgt. McConnell's employment history, it would have discovered that Sgt. McConnell resigned from his position as a police officer in Mechanicsburg, Ohio to avoid discipline and possibly termination for conducting unlawful arrests.

48. When Sgt. McConnell was hired to work in the Village in 2016, it was the fifth police department McConnell had worked at in the preceding five years.

49. In 2017, while employed with the Village, Sgt. McConnell was involved in an incident where he forcefully removed a black woman from her car and tased her in the street.

50. The incident was documented in an investigation by Channel 9's "I-Team."

51. During an interview with the "I-Team" reporter, Village Mayor William Wilson claimed he was unaware of Sgt. McConnell's past employment incidents when McConnell was hired by the Village. Mayor Wilson added that the Village hires its police officers based only the information provided to the Village by the applicants, and that the Village did not independently request information from an applicant's prior employers.

52. Upon information and belief, Sgt. McConnell received no discipline for the incident in 2017, and was permitted to continue policing the Village.

53. The unlawful conduct described above constitutes violations of Mr. Oduimoh's Fourth, Fifth, and Fourteenth Amendment rights.

54. The unlawful conduct described above has caused Mr. Oduimoh to suffer severe emotional distress including, without limitation, severe anxiety and mistrust in dealing with government and authority figures.

**FIRST CLAIM FOR RELIEF**
**Violation of Fourteenth Amendment Rights**
**Sgt. McConnell**

55. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

56. All persons in the United States have a right to equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States.

57. This action arises under the Fourteenth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

58. Sgt. McConnell targeted Mr. Oduimoh for investigation due to Mr. Oduimoh's race.

59. Sgt. McConnell forcefully detained Mr. Oduimoh due to Mr. Oduimoh's race.

60. Sgt. McConnell falsified his arrest report and charged Mr. Oduimoh with a crime he did not commit because Mr. Oduimoh is a black man.

61. At all relevant times, Sgt. McConnell was acting under the color of state law.

62. The conduct of Sgt. McConnell deprived Mr. Oduimoh of the right to the equal protection of the laws, secured by the Fourteenth Amendment to the Constitution of the United States.

63. Mr. Oduimoh has suffered damages as a direct and proximate result of the deprivation of his Fourteenth Amendment rights.

**SECOND CLAIM FOR RELIEF**
**Violation of Fourteenth Amendment Rights**
**Village of Elmwood Place**

64. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

65. This action arises under the Fourteenth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

66. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

67. The Village has unconstitutional customs, policies, and procedures relating to the policing of minorities within its jurisdiction and neglecting the civil rights of racial minorities.

68. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters concerning race-based policing.

69. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning race-based policing amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

70. The Village has ignored its history of unconstitutional race-based policing and was on notice that training in this area was deficient and likely to cause injury.

71. The Village's unconstitutional customs, policies, and procedures is evidenced by Sgt. McConnell's hiring, continued employment after racial incidents, and his unconstitutional investigation, detention, use of force and filing of false criminal charges against Mr. Oduimoh.

72. Upon information and belief, Sgt. McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Oduimoh of his constitutional rights.

73. As a direct and proximate result of the conduct of the Village, Mr. Oduimoh suffered a deprivation of his constitutional rights and damages.

### THIRD CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Excessive Force
### Sgt. McConnell

74. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

75. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

76. In view of all the circumstances surrounding the incident, Sgt. McConnell's use of force against Mr. Oduimoh was unwarranted.

77. In view of all the circumstances surrounding the incident, Sgt. McConnell's action in grabbing Mr. Oduimoh's wrist, jerking him out of his car, and pinning him against the car constituted the use of excessive force.

78. In view of all the circumstances surrounding the incident, the placement of Mr. Oduimoh into handcuffs, the timing of placing him in handcuffs, the use and/or continued use of handcuffs on Mr. Oduimoh in light of no immediate or articulable threat to Sgt. McConnell existing constituted the use of excessive force.

79. Sgt. McConnell, while operating under the color of state law, deprived Mr. Oduimoh of the rights, privileges and immunities secured by the Fourth Amendment to the Constitution of the United States.

80. As a direct and proximate result of Sgt. McConnell's violations or deprivations of the rights, privileges and immunities of Mr. Oduimoh that are secured by the United States Constitution, Mr. Oduimoh has suffered damages.

### FOURTH CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Excessive Force
### Village of Elmwood Place

81. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

82. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

83. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

84. The Village has unconstitutional customs, policies, and procedures relating to the use of force against persons within its jurisdiction.

85. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the use of force by officers against persons.

86. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the use of force against persons amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

87. The Village ignored prior incidents involving the use of excessive force by its police officers, including Sgt. McConnell, and was on notice that the lack of training and/or supervision in this area would likely result in injury.

88. Upon information and belief, Sgt. McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Oduimoh of his constitutional rights.

89. As a direct and proximate result of the conduct of the Village, Mr. Oduimoh suffered a deprivation of his constitutional rights and damages.

**FIFTH CLAIM FOR RELIEF**
**Violation of Fourth Amendment Rights – Illegal Search & Seizure**
**Sgt. McConnell**

90. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

91. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

92. In view of all the circumstances surrounding the incident, the stop, detention, and arrest of Mr. Oduimoh was unwarranted.

93. In view of all the circumstances surrounding the incident, the forceful removal of Mr. Oduimoh from his vehicle, placement of Mr. Oduimoh into handcuffs, the timing of placing him in handcuffs, the use and/or continued use of handcuffs on Mr. Oduimoh in light of no immediate or articulable threat to Sgt. McConnell existing, the continued or extended use of handcuffs on Mr. Oduimoh even after the facts and circumstances should have dispelled any suspicions or hunches, and the search of Mr. Oduimoh exceeded the permissible scope of any

putative *Terry* stop, as well as made the actions of Sgt. McConnell not the least intrusive means reasonably available to verify or dispel any suspicion or hunch.

94. The detention and continued detention of Mr. Oduimoh constituted an arrest without probable cause.

95. The search of Mr. Oduimoh while in handcuffs constitutes a warrantless search that was not premised upon probable cause or exigent circumstances.

96. Sgt. McConnell, while operating under the color of state law, deprived Mr. Oduimoh of the rights, privileges and immunities secured by Fourth Amendment to the Constitution of the United States.

97. As a direct and proximate result of Defendants' violations or deprivations of the rights, privileges and immunities of Mr. Oduimoh that are secured by the United States Constitution, Mr. Oduimoh has suffered damages.

## SIXTH CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Illegal Search & Seizure
### Village of Elmwood Place

98. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

99. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

100. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

101. The Village has unconstitutional customs, policies, and procedures relating to the search and seizure of persons within its jurisdiction.

102. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the search and seizure of persons within its jurisdiction.

103. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the search and seizure of persons amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

104. The Village ignored prior incidents involving illegal search and seizures by its police officers, including Sgt. McConnell, and was on notice that the lack of training and/or supervision in this area would likely result in injury.

105. Upon information and belief, Sgt. McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Oduimoh of his constitutional rights.

106. As a direct and proximate result of the conduct of the Village, Mr. Oduimoh suffered a deprivation of his constitutional rights and damages.

## SEVENTH CLAIM FOR RELIEF
### Violation of Fourth Amendment Rights – Malicious Prosecution
### Sgt. McConnell

107. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

108. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

109. Sgt. McConnell was operating under the color of law during the incident with Mr. Oduimoh.

110. Sgt. McConnell initiated a criminal proceeding against Mr. Oduimoh without probable cause.

111. Sgt. McConnell initiated a criminal proceeding against Mr. Oduimoh based on facts which he knew to be false.

112. Mr. Oduimoh suffered a deprivation of liberty as a result of the criminal proceedings initiated against him.

113. The criminal proceeding was resolved in Mr. Oduimoh's favor.

114. As a direct and proximate result of Defendants' violations or deprivations of the rights, privileges and immunities of Mr. Oduimoh that are secured by the United States Constitution, Mr. Oduimoh has suffered damages.

**EIGHTH CLAIM FOR RELIEF**
**Violation of Fourth Amendment Rights – Malicious Prosecution**
**Village of Elmwood Place**

115. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

116. This action arises under the Fourth Amendment to the Constitution of the United States, and under federal law, particularly Title 42 of the United States Code, § 1983.

117. A governmental entity is responsible under § 1983 "when the execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury…." *Monell v. Dep't Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

118. The Village has unconstitutional customs, policies, and procedures relating to the prosecution of persons without probable cause.

119. The Village has failed to appropriately screen, hire, train, and discipline its police officers in matters involving the prosecution of persons without probable cause.

120. The Village's failure to screen, hire, train, and discipline its police officers in matters concerning the prosecution of persons without probable cause amounts to deliberate indifference to the rights of persons with whom the police officers come into contact.

121. The Village ignored prior incidents involving the prosecution of persons without probable cause and was on notice that the lack of training and/or supervision in this area would likely result in injury.

122. Upon information and belief, Sgt. McConnell acted pursuant to the Village's customs, policies, and procedures when he deprived Mr. Oduimoh of his constitutional rights.

123. As a direct and proximate result of the conduct of the Village, Mr. Oduimoh suffered a deprivation of his constitutional rights and damages.

### NINTH CLAIM FOR RELIEF
### False Arrest / False Imprisonment
### Sgt. McConnell

124. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

125. This tort action arises under the common law of the State of Ohio.

126. Sgt. McConnell intentionally and unlawfully confined or detained Mr. Oduimoh within a limited area, for an appreciable time, against his will and without lawful justification.

127. In intentionally and unlawfully confining or detaining Mr. Oduimoh, Sgt. McConnell acted maliciously, in bad faith, or in a wanton or reckless manner with respect to the rights and interests of Mr. Oduimoh.

128. As a direct and proximate result of the foregoing conduct of Sgt. McConnell, Mr. Oduimoh has suffered damages.

### TENTH CLAIM FOR RELIEF
### Malicious Prosecution
### Sgt. McConnell

129. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

130. This tort action arises under the common law of the State of Ohio.

131. Sgt. McConnell instituted criminal proceedings against Mr. Oduimoh that were terminated in Mr. Oduimoh's favor.

132. Sgt. McConnell lacked probable cause to institute criminal proceedings against Mr. Oduimoh.

133. Sgt. McConnell acted with malice or with a purpose other than to bring Mr. Oduimoh to justice.

134. As a direct and proximate result of Sgt. McConnell's malicious prosecution, Mr. Oduimoh suffered damages including a deprivation of his liberty.

### ELEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### Sgt. McConnell

135. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

136. This tort action arises under the common law of the State of Ohio.

137. The foregoing actions and omissions of Sgt. McConnell towards Mr. Oduimoh were outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

138. The foregoing actions and omissions of Sgt. McConnell towards Mr. Oduimoh caused Mr. Oduimoh to suffer severe emotional distress.

139. As a direct and proximate result of the foregoing, Mr. Oduimoh has suffered damages.

### TWELFTH CLAIM FOR RELIEF
### Assault and Battery
### Sgt. McConnell

140. Mr. Oduimoh incorporates the foregoing allegations as if fully restated here.

141. This tort action arises under the common law of the State of Ohio.

142. Sgt. McConnell intended to, and did, cause Mr. Oduimoh to suffer fear and apprehension when he stood over Mr. Oduimoh at the driver's side door of his vehicle.

143. Sgt. McConnell intended to, and did, cause harmful or offensive contact to Mr. Oduimoh when he forcefully removed Mr. Oduimoh from his vehicle, pinned him against the vehicle with his hands behind his back and placed Mr. Oduimoh in handcuffs.

144. In view of all the circumstances surrounding the incident, a reasonable person would find the conduct of Sgt. McConnell to be harmful and offensive.

145. As a direct and proximate result of the assault and battery by Sgt. McConnell, Mr. Oduimoh has suffered damages.

**WHEREFORE**, Mr. Oduimoh prays that the Court enter judgment in his favor and against the Defendants as follows:

(1) Granting compensatory damages against all Defendants in an amount to be determined at trial;

(2) Granting punitive damages against Sgt. McConnell in an amount to be determined at trial;

(3) Awarding Mr. Oduimoh his attorney fees and costs pursuant to 42 U.S.C. §1988; and,

(4) Granting any other relief to which Mr. Oduimoh may be entitled in law or in equity.

Respectfully submitted,

*/s/ Bradley M. Gibson*
_____
Bradley M. Gibson (0087109)
Finney Law Firm, LLC
1077 Celestial Street, Suite 10
Cincinnati, OH 45202
Telephone: (513) 943-6661
Facsimile: (513) 943-6669

Email: brad@finneylawfirm.com

Richard Ganulin (0025642)
3662 Kendall Avenue
Cincinnati, OH 45208
Telephone: (513) 405-6696
Email: rganulin@gmail.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury.

*/s/ Bradley M. Gibson*

_____
Bradley M. Gibson (0087109)